COURT OF APPEALS
DECISION
DATED AND FILED

July 7, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2227-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF1476

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

STEVEN L. HARRIS,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: KATIE B. KEGEL, Judge. *Affirmed*.

Before Donald, C.J., Colón, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Steven L. Harris appeals from the circuit court's nonfinal order denying Harris's motion to dismiss.[1]  Harris argues that the circuit court incorrectly determined that there was a manifest necessity for declaring a mistrial in Harris's first criminal trial, and absent a manifest necessity, Harris's double jeopardy rights prohibit the State from retrying him for the same offenses.

¶2     For the following reasons, we conclude that the circuit court did not erroneously exercise its discretion by declaring a mistrial based on manifest

---

[1] While we acknowledge that our supreme court has declined to direct that we grant appeals from denied motions to dismiss based on double jeopardy as a matter of course, *State v. Jenich*, 94 Wis. 2d 74, 97A n.1, 292 N.W.2d 348 (1980), our view is that substantial and irreparable harm will always follow from subjecting a defendant to an unlawful second trial, *see State v. Jendusa*, 2021 WI 24, ¶20 n.12, 396 Wis. 2d 34, 955 N.W.2d 777 (characterizing this harm as a "compelling reason[]" to exercise its superintending power, though recognizing that it had chosen not to do so in *Jenich*).  The defendant's petition for leave to appeal does not stay the enforcement of the order appealed from, and the trial court may proceed with the second trial while the appeal is pending.  WIS. STAT. § 808.07; *see also Jenich*, 94 Wis. 2d 74, 97H (Abrahamson, J., concurring on motion for reconsideration).  Thus, we think these appeals will always meet the criteria set forth in WIS. STAT. § 808.03(2) governing permissive appeals.

On this issue, we agree with Justice Abrahamson's concurrence on the motion for reconsideration in *Jenich*:

> I conclude that in order to grant effective protection to the defendant's rights under the double jeopardy provisions of the state and federal constitutions and in order to provide effective administration of the criminal justice system in the state, [the Wisconsin Supreme Court] should, as did the United States Supreme Court in [*Abney v. United States*, 431 U.S. 651 (1977)], require immediate appellate review in the court of appeals of a pretrial order rejecting a claim of double jeopardy.  If the court of appeals can determine from the petitioner's and state's papers on the petition for leave to appeal that the claim is frivolous, the court of appeals should grant leave to appeal and decide the appeal on the merits immediately by a summary affirmance....  I would further require the court of appeals to establish procedures pursuant to [WIS. STAT.] RULE 809.20 … for expediting appeals involving double jeopardy claims.

*Jenich*, 94 Wis. 2d 74, 97G (Abrahamson, J., concurring on motion for reconsideration).

necessity. Thus, the mistrial does not prevent the State from retrying Harris for the same offenses. Accordingly, we affirm the circuit court's order.[2]

## BACKGROUND

¶3 In April 2020, the State charged Harris with eleven crimes related to ongoing cocaine dealing and possession of several guns as a felon. Harris's trial commenced in November 2023. A thirteen-member jury was empaneled and sworn, and opening instructions and statements were concluded the first day. Before trial commenced the next morning, a person with no connection to the case attacked one juror in the bathroom, shoving the juror into a stall, and demanding money. A second juror was also approached by this person, and the person tried to take the second juror's watch. The person was combative with the court deputies and was arrested and criminally charged. The jurors were all directed to the jury room while the person was arrested. Harris witnessed the person being arrested as he was being brought into the courthouse, and Harris's attorney spoke with him about what happened.

¶4 The circuit court commented that the juror involved in the bathroom incident "was very, very shaken," and it "would not, under any circumstances, make a juror sit through a trial after having experienced something like that." The circuit court observed that two jurors had been accosted, "[i]t's a longer trial," and it had concerns about the rest of the panel being "poison[ed]" given that, once the jurors were all placed together in the jury room, "everybody kind of had an idea of

---

[2] We instructed the parties to brief the merits of Harris's double jeopardy argument, and we now resolve the case against Harris on the merits. Thus, we grant Harris's petition for leave to appeal, and we affirm the circuit court's order.

what had happened." The court therefore declared a mistrial, discharged the jury, and scheduled a new trial in January 2024. Harris requested that his counsel move to modify his bail, and after argument from the parties, the court denied the motion because it determined that Harris was still a risk to community safety.

¶5     In July 2024, Harris filed a pro se motion[3] to dismiss on double jeopardy grounds, arguing that there was no manifest necessity for the November 2023 mistrial. The circuit court denied the motion. The court recounted what happened with the jurors on the morning that the mistrial was declared and explained, "I would never have allowed a trial to continue for someone to come in and sit here and listen to that. I don't think that would have been fair to Mr. Harris." It continued,

> I wouldn't want someone to paint with a broad brush and think that person did something criminal to me, so all criminals are bad, all people charged with crimes [are] bad, all of those things. That would bias that juror just because of their own personal experience and the recency in which it had happened. There was no real way to know what the other jurors know, what they were told. Obviously, they were all in the same room as this juror was physically shaken, upset, very clearly impacted by this, and she and the [other] juror who had been attacked presumably would have compared notes somewhat of what did she say to you, what did she say to you, whatever. All of that occurred.

---

[3] While we do not have all of the details on the proceedings that took place between the mistrial and the rescheduled trial date, this court may take judicial notice of electronic circuit court docket entries. *See Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522. It appears, based on CCAP records, that Harris's counsel moved to withdraw in January 2024. The case was adjourned and successor counsel was appointed. Harris then requested to proceed pro se, with appointed counsel as stand-by counsel, which the court allowed after conducting a colloquy with Harris.

The court then explained that the trial could not have proceeded because even if it excused only the two jurors who were accosted, they would still only have an eleven-person jury, and both the parties and the court agreed that there was not enough time remaining in the week to empanel a new jury and complete the trial.

¶6     In October 2024, Harris filed a second motion to dismiss on the same double jeopardy grounds. The circuit court denied the motion, noting that it had "already been litigated" and "[t]his court will not relitigate the issue of [a] mistrial and a subsequent request for dismissal." Harris petitioned this court for leave to appeal, and we ordered the parties to brief the double jeopardy issue.

## DISCUSSION

¶7     Harris asserts that his double jeopardy rights were violated when the State sought to retry him following the circuit court's declaration of a mistrial. Among other arguments, the parties dispute whether the totality of the circumstances justified the circuit court's conclusion that a mistrial was manifestly necessary.

¶8     Double jeopardy protects a criminal defendant from successive prosecutions for the same offense. *State v. Kelty*, 2006 WI 101, ¶16, 294 Wis. 2d 62, 716 N.W.2d 886. "The protection against double jeopardy limits the ability of the State to request that a trial be terminated and restarted." *State v. Seefeldt*, 2003 WI 47, ¶17, 261 Wis. 2d 383, 661 N.W.2d 822. "When the defendant's first trial is terminated, the circumstances of the termination govern whether the double jeopardy clause bars retrial." *State v. Lettice*, 221 Wis. 2d 69, 80, 585 N.W.2d 171 (Ct. App. 1998). "A retrial is permissible whenever, in the circuit court's opinion, taking all the circumstances into consideration, there is a manifest

5

necessity supporting a mistrial." ***State v. Green***, 2023 WI 57, ¶23, 408 Wis. 2d 248, 992 N.W.2d 56 (citation modified).

¶9 "The decision whether to grant a mistrial lies within the sound discretion of the [circuit] court." ***State v. Mink***, 146 Wis. 2d 1, 8, 429 N.W.2d 99 (Ct. App. 1988). The standard of appellate review is "whether, under all the facts and circumstances, giving deference to the [circuit] court's first-hand knowledge, it was reasonable to grant a mistrial under the 'manifest necessity' rule." ***State v. Copening***, 100 Wis. 2d 700, 710, 303 N.W.2d 821 (1981).

¶10 Under the circumstances here, we conclude that the circuit court's finding of manifest necessity was reasonable, and it did not erroneously exercise its discretion by ordering a mistrial on that basis. Neither party provoked the mistrial. The circumstances arose spontaneously when a third party began accosting and attacking people in the courthouse, including two of the jurors in Harris's trial. As the circuit court observed, it would have been extremely prejudicial to Harris to conduct a criminal trial with two jurors on the panel who became crime victims during the trial while at the courthouse serving as jurors. The two accosted jurors were assembled together with the remaining jurors while deputies took the person into custody, and striking the two affected jurors would leave a panel of only eleven. Thus, even if Harris were willing to waive his right to a twelve-person jury and proceed with only eleven jurors (a desire Harris has never expressed), the likelihood that the remaining jurors were tainted was extraordinarily high, and the circuit court had no choice but to dismiss the jurors and proceed with a new panel at the next available opportunity.

¶11 We reject Harris's assertion that "the Government sought a[n] escape to abort the trial and give the prosecution another shot" at locating a

witness because the assertion has no support in the record. Additionally, Harris's claim that he told his attorney that he objected to the mistrial rather than requesting a bail motion is also contradicted by the record. Harris did not say anything when his attorney informed the court that Harris wanted to file a bail motion because the trial was going to be rescheduled. Harris's silence during the mistrial discussion stands in stark contrast to how he responded when the circuit court denied his bail motion, arguing with the court even after being admonished for doing so.

¶12 Accordingly, we conclude that the circuit court did not erroneously exercise its discretion to declare a mistrial based on manifest necessity.[4]

#### CONCLUSION

¶13 For the foregoing reasons, we affirm the circuit court's order.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] Having concluded that the circuit court did not erroneously exercise its discretion to declare a mistrial based on manifest necessity, we need not address the parties' other arguments. *See* ***State v. Blalock***, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).